IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ISAAC D. BALES,

       Plaintiff,

                                     3:13-CV-2280-PK

                                     OPINION AND

v.                                  ORDER

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

_____

PAPAK, Magistrate Judge:

      Plaintiff Isaac D. Bales filed this action December 23, 2013, seeking judicial review of the Commissioner of Social Security's final decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). This court has jurisdiction over Bales' action pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

      Now before the court are Bales' petition (#1) for judicial review and the Commissioner's

Page 1 - OPINION AND ORDER

motion (#18) for remand of Bales' claim to the Administration for further proceedings. It is
Bales' position that by erroneously rejecting medical evidence and by erroneously rejecting his
own testimony regarding his impairments, the Commissioner failed properly to assess his
residual functional capacity after completing step three of the five-step sequential process for
analyzing a Social Security claimant's entitlement to benefits, and for that reason failed to carry
her burden at step five of the process. In consequence, Bales argues, this court should reverse the
Commissioner's decision and remand for award of benefits. The Commissioner largely concedes
Bales' various assignments of error, but argues that this court should instead reverse and remand
for further proceedings. I have considered all of the parties' briefs and all of the evidence in the
administrative record. For the reasons set forth below, the Commissioner's motion for remand is
granted, and Bales' action is remanded to the Commissioner for further proceedings pursuant to
sentence four of 42 U.S.C. § 405(g).

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an
"inability to engage in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected . . . to last for a continuous period of not
less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step
sequential process for determining whether a claimant has made the requisite demonstration. *See
Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520(a)(4). At the first
four steps of the process, the burden of proof is on the claimant; only at the fifth and final step
does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098
(9th Cir. 1999).

Page 2 - OPINION AND ORDER

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482. U.S. at 153-154. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.*, *quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude

Page 3 - OPINION AND ORDER

substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).  If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record.  *See* 20 C.F.R. § 404.1520(e).  The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments.  *See* 20 C.F.R. § 404.1545(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(a)(4)(iv).  If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).  In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.*, *citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id.*, *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.

2006); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

### SUMMARY OF MATERIAL EVIDENCE IN THE ADMINISTRATIVE RECORD[2]

The parties are familiar with the record, and in light of the Commissioner's concession that the ALJ erred and the parties' agreement that these proceedings should be remanded, I summarize herein only the evidence contained within the administrative record that is directly material to my disposition.

Bales was born June 23, 1961. Tr. 25, 68, 78, 89, 90, 153, 165, 204, 221, 230.[3] When he was a child, Bales was abused by his father both sexually and otherwise physically. Tr. 49, 285, 232, 233, 345, 464. While in college, Bales began remembering that childhood abuse and sought counseling from Edward Versteeg, Psy.D., who diagnosed him with post-traumatic stress disorder ("PTSD") and depression caused by the abuse. Tr. 49, 464-465. Bales continued the counseling relationship with Versteeg off and on from that time onwards, through at least the date of the Commissioner's final decision regarding Bales' application for DIB benefits, Tr. 464-467, although he has had counseling relationships with other medical health care providers during that period of time as well.

Bales established a treating relationship with Lina Takano, M.D., for depression and other

---

[2] The following recitation constitutes a summary of evidence contained within the Administrative Record, and does not reflect any independent finding of fact by the court.

[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 12.

concerns, beginning on May 10, 2005. Tr. 285-287. At that time Bales' history of "chronic low-grade depression" was not "as bad" as it had been "before," but Bales reported feeling that he was "sort of a negative and down person." Tr. 285, 286. Takano prescribed Cymbalta to combat Bales' depressive symptoms. Tr. 286. Bales continued consulting with Takano off and on through at least January 2007. Tr. 255-284.

In September 2005, when Bales was employed as a paralegal at the Cosgrave Vergeer Kester, LLP, law firm, a co-worker touched his genitals through his clothing without his consent. Tr. 34, 39, 230, 277, 339, 345, 384. Bales complained regarding the incident, and the co-worker was fired. Tr. 345. The incident caused the severity of Bales' PTSD and depression symptoms to increase significantly. Tr. 230, 277, 384, 466. Bales began consulting with Versteeg in connection with his increased symptoms of depression following the September 2005 incident on January 2, 2006, Tr. 384, and continued to consult with Versteeg in connection with those symptoms off and on at least through April 2012, Tr. 385-412, 451-461. In connection with each of Bales' approximately seventy consultations with Versteeg over that period (with the exception of the consultation of January 13, 2009), Versteeg recorded in his chart notes either "[n]o significant changes to observe," "no significant changes to the current assessment," or (in the majority of cases) both, relative to Versteeg's impressions of January 2, 2006. Tr. 385-412, 451-461.

Bales consulted with Takano again on January 10, 2006, to follow up on previous depression consultations. Tr. 277-278. Bales reported increased PTSD and depression symptoms, and that his situation at work was deteriorating as a result. Tr. 277. Takano continued Bales' Cymbalta prescription. Tr. 278. Bales saw Takano again on January 20, 2006,

Page 7 - OPINION AND ORDER

reporting similar symptoms, and Takano signed forms approving Bales' medical leave of absence from work for 4-6 weeks. Tr. 276. Bales never thereafter returned to work at Cosgrave.

As discussed below, in connection with his March 3, 2010, application for DIB, Bales asserted that he became disabled and unable to work as of January 15, 2007. Tr. 68, 79, 90, 153, 165.

Bales' final consultation with Takano in connection with which there are medical records in the administrative record occurred on January 29, 2007. Tr. 255. At that consultation, Bales reported that he believed it was "time he should get back to work" and that one of his other therapists (Michael Brent, Ph.D.) concurred that he was ready to do so. Tr. 255. Bales reported that his sleep was improved and that he felt more relaxed. Tr. 255. Takano opined that Bales' therapy was going well, and that he would be able to return to work in accordance with his plan by February 1, 2007. Tr. 255.

The administrative record contains no further relevant medical records for Bales from the remainder of 2007 or for any of 2008. References in subsequent medical records and elsewhere in the administrative record indicate that during that period Bales traveled to Europe for a period of months to meet and pursue a possible romantic relationship with a person he had encountered through an online "virtual world" game. Tr. 52, 339, 392, 466. The efforts to pursue a relationship were entirely unsuccessful. Tr. 52, 339, 466. In addition, sporadic references in the record indicate that at some time, possibly during this period, Bales purchased and attempted to run a delicatessen business, without success. Tr. 307.

Following his return to the United States and to Portland, Bales resumed his consulting relationship with Versteeg on January 13, 2009. Tr. 392. At that consultation, Bales reported

Page 8 - OPINION AND ORDER

that he had stopped taking Cymbalta approximately two weeks previously without significant change to his mood. Tr. 392. Versteeg observed that Bales appeared "quite depressed" and assessed him with major depression. Tr. 392.

On November 5, 2009, Bales met for the first time with Leslie J. Christianson, D.O., for a depression/anxiety-management consultation. Tr. 338-339. Christianson assessed Bales with recurrent major depression, anxiety not otherwise specified, and "likely" PTSD. Tr. 339. At that time Bales was taking 100 daily mg of Wellbutrin and 0.5 daily mg of Clonazepam for depression and anxiety, and Christianson increased the Wellbutrin to 200 mg daily for one week and 300 mg daily thereafter. Tr. 339.

Bales consulted with Christianson again on December 10, 2009. Tr. 324-325. In connection with that consultation, Christianson recorded his opinion that:

> [E]xacerbation of [PTSD] was prob[ably] a bigger factor in his not seeking work in 2006-7 time frame after legal issues w[ith] employer resolved. Also he did in fact have one interview w[ith] a lawyer and was given job but next day the offer was rescinded when [Bales] told a fuller story about his troubles at [Cosgrave]. [Bales] states he would go to w[o]rk in non-skilled job like dishwasher if somebody hired him but he states he has applied to jobs such as those and has not been hired due to employer feeling [he] would not be happy since [he had] prev[iously] w[o]rked as [a] legal ass[istan]t.

Tr. 324.

On or around March 3, 2010, Bales applied for DIB from the Administration. Tr. 68, 78, 79, 89, 90-92, 153-156, 165; *cf.* 16 (reciting filing date of March 5, 2010). By and through his application, Bales asserted that his disability onset date was January 15, 2007. Tr. 68, 79, 90, 153, 165. Bales further asserted that the condition that limited his ability to work was "Depression PTSD," Tr. 91, and/or "Depression, PTSD, Memory loss, and Depression ptsd," Tr. 169.

Page 9 - OPINION AND ORDER

On July 14, 2010, Administration consulting psychologist Dorothy Anderson determined

that Bales suffered from a primary medically determinable impairment of anxiety disorder and a

secondary medically determinable impairment of affective disorder, and that each impairment

was severe.  Tr. 71.  Anderson opined that these impairments caused Bales no limitations in

understanding and memory, moderate limitations in the ability to carry out detailed instructions

and the ability to work in coordination or proximity with others without distraction, and

moderate limitations in the ability to interact appropriately with the general public, the ability to

accept instructions and respond appropriately to criticism from superiors, and the ability to get

along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Tr.

73-74.  Anderson further opined that, although Bales was unable to perform the duties of his past

relevant work, namely the position of legal assistant, he was capable of performing unskilled

work with no public contact and low co-worker contact involving only simple tasks and routines.

Tr. 73-76.  On the basis of the foredescribed determinations, the Administration found that Bales

would be able to sustain employment in jobs existing in significant numbers in the national

economy, and was therefore not disabled for purposes of the Act.  Tr. 76.  The Administration

advised Bales of its decision that he was not disabled for purposes of the Act on that same date,

July 14, 2010.  Tr. 93-96, 97.

Bales consulted again with Christianson on July 29, 2010, to follow up in connection

with his depression symptoms.  Tr. 307-308.  Bales reported that since trying Lamictal the

previous month his mood was somewhat improved.  Tr. 307.  Bales further reported that he had

"almost" been hired as a legal assistant the previous month, but suspected he had been

"sabotaged" by his previous employer.  Tr. 307.  Christianson opined that it was "[u]nclear if he'd

even be able to work due to exacerbation of his [PTSD]/depr[ession] with the major job loss 5 years ago," but noted that Bales himself believed "he prob[ably] could" work jobs outside the legal profession if hired for such a job. Tr. 307. Christianson opined that bipolar disorder was "prob[ably]" a more accurate diagnosis for Bales than major depression, and that Bales was "quite vulnerable to exacerbation" of his PTSD symptoms, "prob[ably] in any employment situation." Tr. 307.

On August 27, 2010, Bales requested reconsideration of the Administration's finding of non-disability. Tr. 79, 98. Bales reported no material change in his condition in connection with his request for reconsideration. Tr. 206-211. On November 10, 2010, on reconsideration of the medical evidence, Administration consulting psychologist Robert Henry, Ph.D., opined that Bales' residual functional capacity was consistent with Anderson's foredecribed opinion. Tr. 79-88. On that basis, the Administration affirmed on reconsideration that Bales was not disabled by his affective and anxiety disorders. Tr. 87-88, 89. The Administration notified Bales of its decision on reconsideration on November 12, 2010. Tr. 99-101, 102. On December 27, 2010, Bales requested a hearing before an Administrative Law Judge. Tr. 108.

On February 23, 2011, Bales consulted with Christianson over the telephone regarding his depression and anxiety symptoms, which had recently worsened after Bales had gone through troubles in his long-term relationship. Tr. 438-439. Christianson increased Bales' daily dosages of both Lamictal and Clonazepam. Tr. 438. On March 9, 2011, Bales consulted again with Christianson regarding his bipolar disorder and PTSD symptoms. Tr. 436-437. Bales reported exacerbation of his depression following his relationship problems, but an improvement in his condition following the increase in his Lamictal dosage. Tr. 436. Christianson opined that,

notwithstanding the recent easing of the "acute exacerbation" of Bales' symptoms, he was "by no means in remission from his depression," and that Bales was "probably disabled and unable to work as far as [he] c[ould] tell." Tr. 437. Christianson referred Bales to Thomas Passmore, D.O., for further treatment. Tr. 437.

Bales consulted with Passmore on March 23, April 6, May 4, August 26, and September 16, 2011, and consulted with Passmore telephonically on June 6, 2011. Tr. 419, 424-425, 426, 427-428, 429-430, 432-435. In connection with the consultation of March 23, 2011, Passmore diagnosed Bales with PTSD and moderate major recurrent depression. Tr. 432. Passmore opined, based on Bales' report, that "[Bales] is unable to tolerate work for any long period of time, especially if there is a male authority figure involved." Tr. 433. At the consultation of April 6, 2011, Bales reported to Passmore that he was "feeling calmer" and that "things [we]re better." Tr. 427. Passmore opined that Bales was "[a]dapting" to the changes in his "social situation." Tr. 428. At the consultation of May 4, 2011, Bales reported that he "ha[d] been noticing significant improvement in his mood" and that his "social situation ha[d] improved." Tr. 429. Passmore opined that Bales' depression symptoms were "mild." Tr. 430. During the telephone consultation of June 6, 2011, Bales reported he had been "doing 'okay,'" and Passmore observed that Bales' affect was "bright." Tr. 426. In connection with the consultation of August 26, 2011, Passmore opined that Bales' mood was "stable" and that he was "definitely not in crisis any more." Tr. 425. Passmore observed that Bales was "doing well" in connection with the consultation of September 16, 2011. Tr. 419.

On May 7, 2012, the Administration notified Bales that a hearing had been set before an ALJ for June 20, 2012. Tr. 128-133, 134-142, 147-150.

Page 12 - OPINION AND ORDER

Prior to the hearing, on May 21, 2012, Versteeg provided an unsigned letter, Tr. 464-467, in which he opined that, following the September 2005 incident at Cosgrove which "reignited" his PTSD symptoms, Bales suffered from "an extreme discomfort being around others" such that he could not "see Mr. Bales going to work on a daily basis and interacting with others," Tr. 466. Versteeg further opined that:

> An argument can be made now that Mr. Bales is suffering from Posttraumatic Stress Disorder, Chronic. . . .  The PTSD symptom of "avoidance of situations reminiscent of the trauma," now extends to any and all work environments.  He is incapable of being subordinate to a manager or boss, and therefore cannot be supervised.

Tr. 466.  In his letter, Versteeg described Bales' PTSD symptoms as including:

> recurrent and intrusive distressing recollections of the trauma in the form of thoughts and images, recurrent distressing dreams of the trauma, nightmares, flashbacks, intense psychological distress at exposure to external cues which resemble the trauma, and physiological reactivity on exposure to external cues which resemble an aspect of the trauma.

Tr. 464.

On June 20, 2012, a hearing was conducted before an ALJ in connection with Bales' DIB application. Tr. 31-67.  Appearing at the hearing were Bales, his counsel, Versteeg, and a vocational expert. Tr. 31-67.  At the hearing, Bales' counsel advised the ALJ that Bales had been working 25 hours per week for the past two weeks at an hourly rate of $10, which counsel characterized as "slightly in excess" of the substantial gainful activity threshold, but argued should be characterized as a "trial work period." Tr. 35.  Also at the hearing, Bales testified that, although he would have tried to work had he been hired to do so, he did not think he could have sustained work at any time following his departure from Cosgrove, due to his despondency, anxiety regarding memory problems, tendency to become defensive when criticized over work

Page 13 - OPINION AND ORDER

performance, feelings of shame arising out of his unemployed status, and impairments in his

memory and ability to concentrate. Tr. 42-43, 44. Bales testified that he was not experiencing

those feelings in his new job. Tr. 43. Also at the hearing, Versteeg testified that he had treated

Bales off and on for over 23 years for recurring depression and PTSD arising out of childhood

sexual abuse. Tr. 49. Versteeg testified that "in the . . . three or four years since he left

Cosgrave, [Bales] ha[d] been probably the most isolative person [Versteeg had] ever known."

Tr. 53. Versteeg further testified, however, that "over the past three years" Bales had

"[g]radually, gradually" become less isolative and less dissociative. Tr. 54. Versteeg further

testified that due to his PTSD and due to his problems at Cosgrave Bales had become "avoidant

of entering into" "work environments." Tr. 55. Versteeg testified that Bales' depression

symptoms are "[l]ack of energy, poor sleep, consistent fatigue, poor eating habits, isolation, no

libido, thoughts around death, . . . poor concentration and a good deal of . . . self-loathing," Tr.

55, and that his PTSD symptoms are "nightmares, flashbacks, . . . avoidance of situations which

are reminiscent of the trauma, [and] physiologic reactivity to situations which are reminiscent of

the circumstances or events around a trauma[, meaning] shuddering, gasping, bursting out in

tears, . . . [a] heightened sense of fear," as well as "[d]etachment from others" and/or "[a] sense of

uncertain future," Tr. 55-56. Versteeg testified that over the past few years Bales' grooming has

deteriorated, and that it was "very much surprising" to him that Bales had been able to get and

work a job. Tr. 57. Versteeg testified that if Bales were to become depressed in connection with

his new job, it could "affect his ability to receive feedback." Tr. 59. Versteeg testified that the

primary barriers that had prevented Bales from being able to work full-time "in the last five

years" were Bales' "poor self-esteem, . . . poor maintenance of activities of daily living, sleep,

Page 14 - OPINION AND ORDER

eating, and so forth. . . [a]nd the feelings of detachment from others, his need to be isolated from others." Tr. 60. Versteeg testified that Bales had told him his ability to focus and concentrate had been "poor" over that period, and that he had "no reason to challenge the veracity of that." Tr. 61.

Also at the hearing, the vocational expert provided testimony that an individual 50 years old with a high school degree and a bachelor's degree in English with a history of working as a legal assistant with no exertional limits but limited to simple tasks and routines, limited to unskilled work, with no public interaction and minimal co-worker interaction and no close proximity to or coordination with co-workers would be capable of performing the obligations of jobs existing in significant numbers in the national and Oregon economies, including hand packager, electronics worker, housekeeper, and nursery worker. Tr. 62-64. However, the vocational expert further testified that if such a person were so distractible as to be unable to stay on task during 20% of a work shift, such distractibility would preclude competitive employment. Tr. 65. Similarly, the vocational expert testified that if such a person missed two or more days of work per month on an unpredictable basis, that to would preclude competitive employment. Tr. 66.

On July 26, 2012, the ALJ denied Bales' application for disability insurance benefits. Tr. 13-15, 16-26. Bales timely requested review of the ALJ's decision, Tr. 12, and the Appeals Council denied his request on October 30, 2013, Tr. 1-3. In consequence, the ALJ's decision of July 26, 2012, became the Administration's final order for purposes of judicial review. *See* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel,* 530 U.S. 103, 107 (2000). This action followed.

Page 15 - OPINION AND ORDER

### SUMMARY OF ALJ FINDINGS

The Administrative Law Judge determined that Bales met the insured status requirements of the Act through December 31, 2012. At the first step of the five-step sequential evaluation process, the ALJ found that Bales had not engaged in substantial gainful activity at any time following January 15, 2007, his alleged disability onset date. Tr. 18. In this connection, the ALJ agreed that it was appropriate to treat Bales' part-time employment discussed at the hearing as a trial work period. Tr. 18. The ALJ therefore proceeded to the second step of the analysis.

At the second step, the ALJ found that Bales' medical impairments of "depression, adjustment disorder, and post traumatic stress disorder" were "severe" for purposes of the Act. Tr. 18. The ALJ further found that Bales' additional alleged impairments of obesity, back pain, chest pain, tobacco use, and hyperlipidemia were "non-severe" for purposes of the Act. Because the impairments caused by Bales' depression, adjustment disorder, and PTSD were deemed severe, the ALJ properly proceeded to the third step of the analysis.

At the third step, the ALJ found that none of Bales' impairments was the equivalent of any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 19-20. The ALJ therefore properly conducted an assessment of Bales' residual functional capacity. Specifically, the ALJ found that at all material times:

> [Bales] ha[d] the residual functional capacity to perform . . . work at all exertional levels but with non-exertional limitations. [Specifically, Bales] [wa]s able to perform unskilled work that does not require interaction with the general public, and no more than superficial interaction with co-workers and no close proximity to or coordination with others.

Tr. 20. In reaching this finding, the ALJ considered all of the material objective medical evidence in the record, as well as all of the various witness statements regarding Bales'

symptoms. Tr. 20-24.

At the fourth step of the five-step process, the ALJ found that Bales could not perform the obligations of his past relevant work as a legal assistant, in light of his limitation to unskilled work. Tr. 24.

At the fifth step, the ALJ found in light of Bales' age, education, work experience, and RFC that there were jobs existing in significant numbers in the national and local economy that he could perform. Tr. 25-26. Specifically, the ALJ found that Bales could work in the representative occupations of hand packager, electronics worker, housekeeper, or nursery worker. On that basis, the ALJ found that pursuant to Medical-Vocational Rule 204 and the Medical-Vocational Guidelines, a finding of "not disabled" was appropriate. Tr. 25-26. The ALJ therefore concluded that Bales was not disabled as defined in the Act at any time from January 15, 2007, through the date of decision. Tr. 26.

ANALYSIS

Bales challenges the Commissioner's assessment of his residual functional capacity. Specifically, Bales argues that the Administrative Law Judge erred in improperly affording only "partial weight" to Versteeg's various opinions, in improperly affording only "little weight" to Christianson's various opinions, and in improperly failing to credit Bales' own testimony regarding the severity of his impairments. Bales further argues that, in light of the alleged errors in the ALJ's assessment of his RFC, the Commissioner failed to carry her burden at the fifth step of the five-step process. Bales takes the position that the Commissioner's decision should, in consequence, be reversed and his case remanded to the Administration for award of benefits.

The Commissioner concedes that the ALJ erred in partially discrediting the opinions of

Versteeg and Christianson and is silent regarding the assignment of error in the ALJ's partial

rejection of Bales' testimony. The Commissioner takes the position that the appropriate judicial

response to the ALJ's conceded errors is to reverse and remand for further proceedings.

In consequence, the sole question now at issue before this court is whether remand should

be for award of benefits or for further proceedings.

> Usually, "[i]f additional proceedings can remedy defects in the original
> administrative proceeding, a social security case should be remanded." *Lewin v.
> Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). The Social Security Act, however,
> makes clear that courts are empowered to affirm, modify, or reverse a decision by
> the Commissioner "with or without remanding the cause for a rehearing." 42
> U.S.C. § 405(g) . . . . Accordingly, every Court of Appeals has recognized that in
> appropriate circumstances courts are free to reverse and remand a determination
> by the Commissioner with instructions to calculate and award benefits. . . .
> Courts have generally exercised this power when it is clear from the record that a
> claimant is entitled to benefits. . . .

*Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (bracketed modifications original;

original emphasis removed; some citations omitted). The Ninth Circuit has therefore developed

a "three-part credit-as-true standard, each part of which must be satisfied in order for a court to

remand to an ALJ with instructions to calculate and award benefits:"

> (1) the record has been fully developed and further administrative proceedings
> would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient
> reasons for rejecting evidence, whether claimant testimony or medical opinion;
> and (3) if the improperly discredited evidence were credited as true, the ALJ
> would be required to find the claimant disabled on remand.

*Id.* at 1020 (citations omitted). Moreover, the *Garrison* court affirmed the rule, first expressly

articulated in *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003), that where "evaluation of

the record as a whole creates serious doubt that a claimant is, in fact, disabled," courts are

*required* to remand for further proceedings rather than for award of benefits "even [where] all

[three] conditions of the credit-as-true rule are satisfied." *Garrison*, 759 F.3d at 1021.

Page 18 - OPINION AND ORDER

For the reasons that follow, I agree with the Commissioner that remand for further proceedings is appropriate here.

## I.    Bales' Assignments of Error

### A.    Versteeg's Opinions

As noted above, Versteeg saw Bales approximately seventy times between January 9, 2006 (just over one year prior to Bales' alleged disability onset date), and April 30, 2012, assessing him as depressed with recurrence of PTSD symptoms on January 9, 2006, following the September 2005 workplace groping incident and thereafter recording in contemporaneous chart notes that he observed no significant changes in Bales' condition and generally making no significant change in his assessment thereof. Tr. 384-386, 392-412, 451-461. In addition, Versteeg provided a letter in connection with Bales' scheduled hearing before an ALJ in which he opined that, following the September 2005 incident which "reignited" his PTSD symptoms, Bales suffered from "an extreme discomfort being around others" such that he could not "see Mr. Bales going to work on a daily basis and interacting with others," Tr. 466. Versteeg further opined that:

> An argument can be made now that Mr. Bales is suffering from Posttraumatic Stress Disorder, Chronic. . . .  The PTSD symptom of "avoidance of situations reminiscent of the trauma," now extends to any and all work environments. He is incapable of being subordinate to a manager or boss, and therefore cannot be supervised.

Tr. 466.  In his letter, Versteeg described Bales' PTSD symptoms as including:

> recurrent and intrusive distressing recollections of the trauma in the form of thoughts and images, recurrent distressing dreams of the trauma, nightmares, flashbacks, intense psychological distress at exposure to external cues which resemble the trauma, and physiological reactivity on exposure to external cues which resemble an aspect of the trauma.

Tr. 464.

Versteeg also testified at the hearing of June 20, 2012. Tr. 48-61. It was Versteeg's

testimony that he had treated Bales off and on for over 23 years for recurring depression and

PTSD arising out of childhood sexual abuse. Tr. 49. Versteeg testified that "in the . . . three or

four years since he left Cosgrave, [Bales] ha[d] been probably the most isolative person

[Versteeg had] ever known." Tr. 53. Versteeg further testified, however, that "over the past

three years" Bales had "[g]radually, gradually" become less isolative and less dissociative. Tr.

54. Versteeg further testified that due to his PTSD and due to his problems at Cosgrave Bales

had become "avoidant of entering into" "work environments." Tr. 55. Versteeg testified that

Bales' depression symptoms are "[l]ack of energy, poor sleep, consistent fatigue, poor eating

habits, isolation, no libido, thoughts around death, . . . poor concentration and a good deal of . . .

self-loathing," Tr. 55, and that his PTSD symptoms are "nightmares, flashbacks, . . . avoidance of

situations which are reminiscent of the trauma, [and] physiologic reactivity to situations which

are reminiscent of the circumstances or events around a trauma[, meaning] shuddering, gasping,

bursting out in tears, . . . [a] heightened sense of fear," as well as "[d]etachment from others"

and/or "[a] sense of uncertain future," Tr. 55-56. Versteeg testified that over the past few years

Bales' grooming has deteriorated, and that it was "very much surprising" to him that Bales had

been able to get and work a job. Tr. 57. Versteeg testified that if Bales were to become

depressed in connection with his new job, it could "affect his ability to receive feedback." Tr. 59.

Versteeg testified that the primary barriers that had prevented Bales from being able to work full-

time "in the last five years" were Bales' "poor self-esteem, . . . poor maintenance of activities of

daily living, sleep, eating, and so forth. . . . [a]nd the feelings of detachment from others, his need

to be isolated from others." Tr. 60. Versteeg testified that Bales had told him his ability to focus

and concentrate had been "poor" over that period, and that he had "no reason to challenge the

veracity of that." Tr. 61.

The ALJ summarized Versteeg's opinions largely accurately, but gave them only "partial

weight" on the grounds that Versteeg indicated "that the claimant ha[d] steadily improved" since

September 2005, that Versteeg's credence of Bales' self-report regarding his ability to concentrate

was misplaced in light of "evidence of record consistently indicat[ing] that the claimant is

intelligent, thoughtful, well spoken, has an organized thought process, and good insight and

judgment," in light of Versteeg's failure to document concentration impairments in his chart

notes, and in light of Bales' failure consistently to complain about concentration problems to

Versteeg or other care providers, and that Versteeg's testimony regarding Bales' social

functioning and self-isolation was misplaced in light of "numerous reports of the claimant being

friendly, cooperative, and engaged in social activities and relationships with others. Tr. 24. Bales

argues that the ALJ's proffered grounds for giving only partial weight to Versteeg's testimony are

specious in that (i) nothing in Versteeg's chart notes or opinions suggests that Bales steadily

improved without regression between January 15, 2007, and June 20, 2012, (ii) the evidence of

record does not "consistently" indicate that Bales was unimpaired in his ability to concentrate,

(iii) the record does not contain "numerous" reports indicating Bales' engagement in social

activities, and (iv) to the extent that the record may contain any such reports, those reports cannot

outweigh the deference owed to Versteeg's opinion as Bales' treating psychologist. Bales takes

the position that if Versteeg's opinions are credited as true, they would mandate a finding of

disability and remand for award of benefits. The Commissioner agrees that the ALJ's proffered

Page 21 - OPINION AND ORDER

grounds for partially discrediting Versteeg's opinions are inadequate for purposes of the Act, but

argues that remand should be for further proceedings because the record contains unresolved

issues requiring further development and because it is possible that Bales' trial work period

discussed at the hearing was successful.

  To reject the uncontroverted opinion of a treating or examining physician, an ALJ must

articulate "clear and convincing" reasons for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216

(9th Cir. 2005), *citing Lester*, 81 F.3d at 830-831. If a treating or examining physician's opinion

is in conflict with substantial medical evidence or with another physician's opinion, however, it

may be rejected for merely "specific and legitimate reasons." *Id.* I agree with the parties that the

ALJ's proffered grounds were insufficient to meet this standard, and therefore constituted error.

  **B. Christianson's Opinions**

  Bales consulted with Christianson on five occasions between November 5, 2009, and

March 9, 2011. On November 5, 2009, Christianson assessed Bales with recurrent major

depression, anxiety not otherwise specified, and "likely" PTSD. Tr. 339. At that time Bales was

taking 100 daily mg of Wellbutrin and 0.5 daily mg of Clonazepam for depression and anxiety,

and Christianson increased the Wellbutrin to 200 mg daily for one week and 300 mg daily

thereafter. Tr. 339. On December 10, 2009, Christianson recorded his opinion that:

> [E]xacerbation of [PTSD] was prob[ably] a bigger factor in [Bales'] not seeking
> work in 2006-7 time frame after legal issues w[ith] employer resolved. Also he
> did in fact have one interview w[ith] a lawyer and was given job but next day the
> offer was rescinded when [Bales] told a fuller story about his troubles at
> [Cosgrave]. [Bales] states he would go to w[o]rk in non-skilled job like
> dishwasher if somebody hired him but he states he has applied to jobs such as
> those and has not been hired due to employer feeling [he] would not be happy
> since [he had] prev[iously] w[o]rked as [a] legal ass[istan]t.

Tr. 324. On July 29, 2010, Christianson recorded his opinion that it was "[u]nclear if he'd even

Page 22 - OPINION AND ORDER

be able to work due to exacerbation of his [PTSD]/depr[ession] with the major job loss 5 years

ago," but noted that Bales himself believed "he prob[ably] could" work jobs outside the legal

profession if hired for such a job. Tr. 307. Christianson further opined that Bales was "quite

vulnerable to exacerbation" of his PTSD symptoms, "prob[ably] in any employment situation."

Tr. 307. On February 23, 2011, Christianson increased Bales' dosage of antidepressant

medication based on Bales' self-report of increased depression and anxiety symptoms. Tr. 438.

On March 9, 2011, Christianson opined that, notwithstanding recent easing of the "acute

exacerbation" of Bales' symptoms, he was "by no means in remission from his depression," and

that Bales was "probably disabled and unable to work as far as [he] c[ould] tell." Tr. 437.

The ALJ summarized Christianson's opinions largely accurately if not particularly

thoroughly, but gave them "little weight because they are conclusory and appear to be based on a

rather narrow treatment relationship with the claimant," and because "the record clearly

documents symptom alleviation with medication" which the ALJ found to be in direct (but

unspecified) conflict with Christianson's opinions. Bales argues that the ALJ's proffered grounds

for giving little weight to Christianson's opinions are meritless, in that Christianson was a

treating healthcare provider who examined Bales' mental health status and adjusted Bales'

medications based on his progress and symptoms, and because the record establishes that from

time to time Bales' symptoms would become overwhelming notwithstanding his reliance on

medications. The Commissioner agrees that the ALJ's proffered grounds for largely discrediting

Christianson's opinions are inadequate for purposes of the Act, but argues that remand should be

for further proceedings because the record contains unresolved issues requiring further

development and because it is possible that Bales' trial work period discussed at the hearing was

Page 23 - OPINION AND ORDER

successful. I agree with the parties that the ALJ's rejection of Christianson's opinions was erroneous.

### C.    Bales' Testimony

At the hearing of June 20, 2012, Bales testified that, although he would have tried to work had he been hired to do so, he did not think he could have sustained work at any time after leaving his position at Cosgrove, due to his despondency, anxiety regarding memory problems, tendency to become defensive when criticized over work performance, feelings of shame arising out of his unemployed status, and impairments in his memory and ability to concentrate. Tr. 42-43, 44. The ALJ summarized Bales' testimony accurately, but found that Bales' testimony regarding the "intensity, persistence and limiting effects" of his symptoms were "not credible to the extent . . . inconsistent" with the mental RFC discussed above. Tr. 23. Specifically, the ALJ found Bales' testimony in that regard unsubstantiated because "many of the claimant's problems appear to be situational in nature, and he has reported significant relief with medication," because of the large hiatus in Bales' medical records from shortly after his alleged disability onset date of January 15, 2007, through January 2009, because on several occasions subsequent to the alleged onset date Bales indicated he was actively looking for work, and because for the two weeks prior to the hearing Bales had been working with apparent success. Tr. 23-24. Bales argues that the ALJ's proffered grounds for partially discrediting his testimony are inadequate because while the record arguably demonstrates "situational" exacerbation of Bales' symptoms, that fact does not constitute evidence that there was no underlying disabling condition, because the record contains instances of severe symptoms notwithstanding medication, because Bales' subjective belief that he needed to look for work does not establish that he was not disabled, because the hiatus in

Page 24 - OPINION AND ORDER

Bales' medical care does not suggest that he was symptom-free during that period, and because the record establishes that Bales experienced severe depression during the period from January 2009 through approximately March or April 2011. The Commissioner is silent as to the adequacy of the ALJ's proffered grounds for partially discrediting Bales' testimony.

When a claimant's medical record establishes the presence of a "medically determinable impairment" that "could reasonably be expected to produce the [claimant's alleged] pain or other symptoms," the ALJ must evaluate the claimant's credibility in describing the extent of those symptoms. 20 C.F.R. § 404.1529. In the event the ALJ determines that the claimant's report is not credible, such determination must be made "with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002), *citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*).

In weighing a claimant's credibility, the ALJ may consider, *inter alia*, the "claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." *Id.* (internal modifications omitted), *citing Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997). While a finding that a claimant lacks credibility cannot be premised solely on a lack of medical support for the severity of the claimed symptoms, *see Light*, 119 F.3d at 792, *citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), where the ALJ's credibility finding is supported by substantial evidence in the record, the finding will not be disturbed, *Thomas*, 278 F.3d at 959, *citing Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999).

Page 25 - OPINION AND ORDER

In light of the Commissioner's failure to address Bales' assignment of error in the ALJ's partially negative assessment of his credibility, I assume *arguendo* that the ALJ's credibility determination was based on findings so unspecific as to constitute error under *Thomas* and *Bunnell*.

## II.    Application of the Credit-as-True Standard

Assuming *arguendo* that all three elements of the credit-as-true standard were satisfied by one or more of the ALJ's foredescribed errors considered either singly or collectively -- that is, assuming that the record has been fully developed and that if one or more improperly discredited medical opinions were credited as true, such opinion or opinions would mandate a finding of disability -- remand for further proceedings would nevertheless be required under the *Connett* flexibility rule, pursuant to which the courts of the Ninth Circuit are "requir[ed] . . . to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021. Specifically, I find that treating physician Takano's opinion of January 29, 2007, that Bales would be able to return to work within a short time (and her notes indicating that Bales and treating psychologist Brent shared that opinion), Tr. 255, the period between January 2007 and January 2009 during which Bales did not seek care in connection with his mental-health symptoms but rather traveled extensively and may have attempted to run a small business, and the numerous references to significant improvement in Bales' mental-health condition in early- to mid-2011, Tr. 419, 424-425, 426, 427-428, 429-430, create serious doubt that during any period of not fewer than 12 months between January 15, 2007, and July 26, 2012, Bales could not have been expected to sustain any form of gainful unskilled employment. In

Page 26 - OPINION AND ORDER

consequence, even if all three conditions of the credit-as-true rule were satisfied, remand for award of benefits would be inappropriate, and I therefore remand for further proceedings in connection with which the ALJ will consider the evidence discussed above in assessing Bales' RFC.

**CONCLUSION**

For the reasons set forth above, the Commissioner's final decision denying Bales' application for disability insurance benefits is reversed, and Bales' action is remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). A final judgment shall be prepared.

Dated this 19th day of May, 2015.

Honorable Paul Papak
United States Magistrate Judge

Page 27 - OPINION AND ORDER